## LAWRENCE OSTLUND AND ANOTHER v. COUNTY OF STEARNS.
## FRED ICKLER AND ANOTHER v. SAME.[1]

March 15, 1946.

Nos. 34,100, 34,101.

---

[1]Reported in 22 N. W. (2d) 173.

330

*David T. Shay,* for appellant.
*Atwood & Quinlivan,* for respondents.

MAGNEY, JUSTICE.

Plaintiffs, property owners, brought actions against defendant, county of Stearns, to enjoin the county from gathering quantities of surface waters and unnecessarily, needlessly, and wilfully casting and discharging it upon their property, and to recover for damages sustained thereby. Plaintiffs prevailed, and defendant appeals from the judgments entered.

The property here involved is located west of the Mississippi River and about 2,500 feet northwesterly from its junction with the Sauk River. The Mississippi flows in a southeasterly direction, and the Sauk comes in from the west to meet it. On the westerly side of the Mississippi is a county road known as state aid road No. 1, which runs from St. Cloud to Sartell and beyond. Plaintiffs' properties lie between this road and the Mississippi River, thus fronting on the road and the river. The distance from the road to the river at this point is approximately 600 feet. As the road approaches the Sauk, this distance is shortened to about 150 feet. Plaintiffs Ostlund own two acres of land, and plaintiffs Ickler seven acres. The Ostlund tract is unimproved, but the Ickler and other tracts have been improved with attractive homes and appropriate landscaping. The land west of the road was farmed by a Hubert O. Orton and has the usual farm-road entrance.

There is a gradual slope of the land from the west and toward the Mississippi River. Before any road was built, much of the surface water would evaporate and the excess would run off into the river. The road now known as state aid road No. 1 was laid out and built over 40 years ago. It was originally a flat dirt road, cutting across the gradual slope. At some time small culverts were installed. Mr. Orton, who has lived on his farm for over 25 years, testified that they were first placed there in 1932 or 1933. There is some testimony that small culverts had been installed under the old road long before that. Whatever culverts had been installed

were small and so installed that they were ineffectual. There was a shallow ditch along the road on its west side. Some of the surface water flowed over the road and was spread out over the ground at different places and in several different courses reached the river. In 1937 and 1938, the road was black-topped, but this made no change or modification in the surface-water distribution. There was a continuous downward grade of the road from a point 1,200 feet north of the Orton driveway, which was about opposite the Ostlunds' property, toward the Sauk River. Some of the accumulated water would flow along the ditch on the west side of the highway and over the Orton driveway, which was low. It would continue southeasterly to and through the culvert of a town road which entered the county road from the west and about 400 feet from the Orton driveway; then it would overflow the bank and pass over lower ground to the Sauk River. The foregoing briefly summarizes the situation prior to 1940.

In that year the county rebuilt the road. It was raised about a foot or a foot and a half and black-topped. The ditch on the west side was widened and deepened. The Orton farm-entrance road was raised about a foot and a half to meet the new elevation of the county road. An 18-inch concrete culvert was installed about 50 feet north of the Orton driveway and in front of the Ostlund property. There was no culvert underneath this driveway. The result of these changes was that surface water could not flow over the county road or the Orton driveway. Both operated as effective dams. Water could no longer run along the ditch and over the farm road toward the Sauk River. Before the county road was rebuilt, the water drained for 1,200 feet northerly of the Orton farm. After the ditch was widened and deepened, it drained for a distance of 2,500 feet. All the surface water over an estimated area of 3,000,000 square feet was forced to pass through the 18-inch culvert and was dumped onto the Ostlund property and from there onto the Ickler and other tracts. The drainage area had been practically doubled by the enlargement of the ditch. The water so gathered was

dumped in greater and destructive quantities and at a faster rate and caused the damages complained of.

The evidence clearly shows that this surface water could have been disposed of in several ways with small expense. A culvert could have been placed in the Orton driveway, thus permitting the water to continue on in the ditch toward the Sauk River, either to overflow the ditch bank, as it had done prior to 1940, or to continue on until it reached the river. A deepening of the ditch to two and one-half or three feet for a short distance would have permitted the water so to do. Other practical suggestions involving only a reasonable expenditure of money were also made.

We have recited the testimony most favorable to plaintiffs, as we must, and in the light of that testimony it is our opinion that it amply supports the findings and that the court was right in awarding damages to plaintiffs and in enjoining defendant from continuing to gather surface water as it has done and cast it in destructive quantities onto the lands of plaintiffs.

No authorities need be cited. This is clearly a case where the county collected and gathered surface water by artificial means and cast it upon the premises of another in increased and injurious quantities. Since under the testimony and the findings of the court the claimed damages arose from the reconstruction of the road and the ditch in 1940, the question whether the county had secured the right to cast surface water in destructive quantities on plaintiffs' premises by prescription does not arise.

Judgments affirmed.